NOTICE
Decision filed 05/15/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170342

NO. 5-17-0342

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| *In re* ESTATE OF ARNOLD O. REXROAD, SR. | ) | Circuit Court of |
| | ) | Effingham County. |
| | ) | |
| | ) | No. 12-P-57 |
| | ) | |
| (Estate of Arnold O. Rexroad, Sr., Appellee, v. Mid-West Truckers | ) | Honorable |
| Risk Management Association, Intervenor-Appellant). | ) | Daniel E. Hartigan, |
| | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The intervenor, Mid-West Truckers Risk Management Association (MTRMA), appeals the August 4, 2017, order of the circuit court of Effingham County, which struck in its entirety MTRMA's lien, pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2016)), which it claimed from the proceeds of a wrongful death settlement recovered by the estate of Arnold O. Rexroad, Sr. (Estate). For the following reasons, we reverse and remand with directions that the circuit court adjudicate MTRMA's lien pursuant to statute and reconsider, in light of this opinion, MTRMA's request for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013).

1

¶ 2                                      FACTS

¶ 3      On August 1, 2012, the Estate filed a probate action in the circuit court of Effingham County, requesting letters of administration and a supervised administration of the decedent's estate. On October 4, 2012, the circuit court entered an order appointing specified heirs of the Estate to serve as special administrators to pursue a wrongful death action arising from the death of the decedent (Indiana action). On December 5, 2014, MTRMA filed a petition to intervene in the probate action, making the following allegations.

¶ 4      MTRMA alleged that, at the time of his death, the decedent was employed by Hetzels Overland Transport, Inc. (Hetzels), and was killed in the course of his employment. At that time, Hetzels was a member of MTRMA, which is a self-insured pool association licensed and doing business in Illinois to provide workers' compensation benefits for its members and employees. One of the administrators of the Estate, Cathy Rexroad as decedent's widow, duly applied for, has received, and continued to receive workers' compensation benefits for the death of the decedent from MTRMA. MTRMA had been made aware of a partial settlement of the Indiana action and requested intervention in the probate matter for the purposes of protecting its lien pursuant to section 5(b) of the Act. 820 ILCS 305/5(b) (West 2014). Furthermore, MTRMA requested that it be allowed to participate in the probate court's approval of any settlement of the Indiana action.

¶ 5      On September 25, 2015, the Estate filed a motion for authorization to distribute statutory attorney fees. According to the motion, the Estate's claim against one of the defendants in the Indiana action, Lindsay Measel, settled for $100,000 (Measel settlement). The Estate requested authorization to disburse $25,000 from the proceeds of this settlement to the attorney for the Estate. On October 5, 2015, MTRMA filed a response to this motion, stating that it did not object

2

to the attorney fee disbursement but it did claim a lien of $72,695.73, representing 75% of the workers' compensation benefits it had paid up to the date of the motion, pursuant to section 5(b) of the Act. 820 ILCS 305/5(b) (West 2014). The motion also recognized that, in addition to the 25% reduction for attorney fees in procuring the settlement, this lien amount was subject, pursuant to the same section, to a setoff for prorated costs incurred by the Estate. MTRMA requested a distribution of $72,695.73 minus the costs the Estate was entitled to pursuant to section 5(b) of the Act, in partial satisfaction of its workers' compensation lien.

¶ 6    On February 22, 2016, the Estate filed an "Unopposed Motion For Authorization To Distribute Statutory Attorney's Fees, Costs, and Workers' Compensation Lien." Stating that its motion was based on an agreement between the Estate and MTRMA, the Estate requested an order authorizing disbursement of $25,000 for attorney fees to counsel for the Estate, $12,053.61 for costs to counsel for the Estate, and the balance of $62,946.39 to MTRMA "as repayment for the workers' compensation lien." On March 10, 2016, the circuit court entered an order approving of this distribution of the proceeds of the Measel settlement.

¶ 7    On October 26, 2016, the Estate filed a motion to adjudicate workers' compensation lien, in which it requested that the remainder of MTRMA's workers' compensation lien be stricken in its entirety. The Estate argued that MTRMA is not entitled to the remainder of its lien due to the following allegations of wrongdoing on the part of MTRMA: (1) direct communications with the family of the decedent despite knowing the Estate was represented by counsel; (2) obstructing the Estate's counsel in investigating the wrongful death action by prohibiting the Estate from interviewing its employees, refusing to produce the truck and trailer the decedent was driving for inspection, and providing its inaccurate "alive and well" investigative reports to the defense; (3) failing to pay the decedent's widow the full amount of workers' compensation benefits owed;

3

(4) demanding a distribution toward its lien from the Measel settlement; (5) objecting to an unspecified amount of costs claimed by the Estate as required to effect a settlement of the remainder of the Indiana action; and (6) seeking to recalculate its *pro rata* share of costs in light of the settlement of the remainder of the Indiana action, which the Estate characterized as a "reneg" of its prior agreement to pay its share of costs at the time of the Measel settlement.

¶ 8 The Estate attached several exhibits to its motion to strike the remainder of MTRMA's workers' compensation lien as corroboration for its allegations of misconduct. Exhibit A to the Estate's motion is a list of payments made by MTRMA on the decedent's widow's workers' compensation claim, including payments of $473.03 per week. Exhibit B is a letter from the Estate's counsel to Hetzels, requesting that it preserve all evidence related to the decedent's collision. Exhibit C is a letter from Hetzels' attorney notifying the Estate of his representation of Hetzels and requesting that the Estate direct any request for communications of its employees to the attorney. Exhibit D is an e-mail from counsel for the Estate to Hetzels' counsel, opposing this request on the basis that not all of Hetzels' employees are part of Hetzels' control group.

¶ 9 Exhibits E through J are a series of e-mails dated May 14, 2012, through October 2, 2013, whereby counsel for the Estate makes repeated requests of Hetzels for inspection of the truck and trailer the decedent was driving, as well as records regarding same. A January 11, 2013, e-mail from counsel for Hetzels indicates that he had forwarded the request for inspection to Hetzels' insurance carrier, expecting to speak with her that day and requesting that counsel for the Estate contact him to discuss the request to inspect. An October 2, 2013, e-mail from counsel for the Estate requests assistance in determining whether the truck the decedent was driving had an electrical problem that would have kept the truck's hazard lights from operating and asks if they would be unwilling or unable to supply the information informally. Exhibit K is a letter from

counsel for the Estate to MTRMA's servicer, stating that, due to MTRMA's lack of cooperation in assisting with the investigation into the wrongful death claim, the Estate "will be left with no choice but to resist [the assertion of a lien] owing to the complete and total lack of cooperation," and concluding "[h]opefully this will change soon so that [the Estate] can reconsider [its] position."

¶ 10 Exhibit L to the Estate's motion is an e-mail exchange between counsel for the Estate and previous counsel for MTRMA in April 2015 on several matters, including the conduct of "alive and well" checks on the decedent's widow and the agreement in relation to the Measel settlement. Exhibits M and N are "alive and well check" reports on the widow for the Estate conducted by an investigative firm at the behest of MTRMA's servicer. These reports are dated May 19, 2015, and February 9, 2016, respectively. The reports do indicate that the investigator inquired of the decedent's widow as to whether she would consider a settlement of the workers' compensation claim. Exhibit O is an exchange between counsel whereby it is memorialized that there had been an underpayment of workers' compensation benefits by MTRMA. Exhibit P is the unopposed motion to distribute the Measel settlement between counsel for the Estate and MTRMA. Exhibits Q through V are an e-mail exchange whereby counsel for MTRMA insists on partial payment of the workers' compensation lien from the Measel settlement, as well as a deposition transcript in which issues that were illustrated through the prior exhibits are also evidenced.

¶ 11 On December 8, 2016, MTRMA filed a response to the Estate's motion to strike its workers' compensation lien. In its response, MTRMA argued that none of the issues raised by the Estate should be considered in determining whether MTRMA is entitled to its statutory lien. According to MTRMA, the circuit court's authority and obligation is to fully protect MTRMA's

5

lien and requested adjudication of its lien pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2016)), which requires it be reimbursed for 75% of the benefits it had paid, minus its *pro rata* share of costs. In addition, MTRMA argued that because the workers' compensation claim is not settled, MTRMA is entitled to a credit for any future payments in the amount of a 75% reduction in the benefit rate. MTRMA requested that the circuit court adjudicate its workers' compensation lien from the Estate's final settlement of $1.38 million,[1] as provided by law. Both parties filed further briefs on these issues prior to a hearing that was held on January 9, 2017.

¶ 12 According to a memorandum of law filed by the Estate on February 9, 2017, the circuit court, at the January 9, 2017, hearing, requested that the parties "provide memorand[a] discussing how [MTRMA]'s lien and *pro rata* share of costs are calculated pursuant to Illinois case law and the [Illinois Supreme] Court's recent decision in *Bayer v. Panduit Corp. Area Erectors*, 2016 IL 119553." According to the Estate's memorandum, because MTRMA refused to wait until the conclusion of the Indiana action, seeking partial reimbursement of its lien at the time of the Measel settlement, MTRMA was no longer entitled to any reimbursement for its remaining lien.

¶ 13 On March 6, 2017, MTRMA filed its supplemental memorandum, setting forth in detail its proposed method for calculating its lien. According to this supplemental memorandum, the circuit court, at the January 9, 2017, hearing, specifically requested briefing on the present value of MTRMA's lien based on its obligation to make future workers' compensation payments to the decedent's widow. At the outset, MTRMA pointed out that, pursuant to section 5(b), the Estate's settlement of the wrongful death action was not lawful because MTRMA did not consent to the

---

[1]At oral argument, counsel for MTRMA represented that the balance of the settlement from all defendants other than Measel was $1.48 million.

settlement and the court in the Indiana action did not issue an order fully indemnifying or protecting MTRMA's lien. MTRMA's memorandum then set forth, in detail, its position as to the following:

The total value of the Estate's workers' compensation claim;

MTRMA's maximum liability for attorney fees;

MTRMA's maximum liability for *pro rata* costs;

The value of workers' compensation payments to date;

Prior reimbursement by the Estate to the employer from the Measel settlement;

Calculation of amount presently owed by the Estate to MTRMA;

Calculation of MTRMA's setoff against future obligations.

¶ 14    Pursuant to its calculations, MTRMA argued that it was entitled to an immediate reimbursement of $22,187.41 through February 14, 2016. In addition, MTRMA suggested that due to the size of the wrongful death settlement and its maximum workers' compensation liability, it should be entitled to suspend payments to the decedent's widow, except 25% of its weekly payment obligation for its statutory share of attorney fees, which it represented would be $120.40 per week. However, MTRMA argued that, due to the Estate's alleged malfeasance in distributing settlement proceeds without obtaining MTRMA's consent or protecting its lien, it should be relieved of its obligations to pay its share of attorney fees in the form of reduced weekly payments and should be granted its fees and costs associated with recovering its lien pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 15    On March 17, 2017, the Estate filed a motion to supplement its memorandum in accordance with the circuit court's January 9, 2017, order that it supply affidavits supporting its claim for costs associated with prosecuting the Indiana action. The Estate also filed a reply to

MTRMA's supplemental memorandum, attaching documentation that the Estate agreed to hold the contested lien amount in escrow. On June 9, 2017, the circuit court held another hearing on the adjudication of the workers' compensation lien, which consisted solely of argument by counsel. On August 4, 2017, the circuit court entered an order striking MTRMA's workers' compensation lien in its entirety. On September 1, 2017, MTRMA filed a notice of appeal.

¶ 16                                          ANALYSIS

¶ 17    The threshold issue presented by this appeal is whether a workers' compensation lien, pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2016)), can be subject to reduction or elimination due to conduct on the part of the insurer in its handling of the workers' compensation claim itself, in its cooperation with an investigation of third-party causes of the injury, or in its negotiations with the employee regarding the satisfaction of its lien. This presents a question of law for which our standard of review is *de novo. Environmental Control Systems, Inc. v. Long*, 301 Ill. App. 3d 612, 622 (1998). MTRMA's workers' compensation lien is governed by section 5(b) of the Act (820 ILCS 305/5(b) (West 2016)), which provides:

> "Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to

8

be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act."[2]

¶ 18 According to this plain language of section 5(b), an employer's[3] right to reimbursement of the full amount of benefits paid or to be paid to the injured or deceased worker is absolute.[4] This is because the workers' compensation lien is a crucial foundation of workers' compensation law in Illinois. See, *e.g.*, *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 397 (2008); *Harder v. Kelly*, 369 Ill. App. 3d 937, 942 (2007). This important public policy, that an employer, even if it is not negligent, should compensate the employee for an injury incurred on the job, is predicated upon there being no other recovery available. *Denius v. Robertson*, 98 Ill. App. 3d 83, 87 (1981). However, when recovery is obtained from the parties actually responsible for the employee's injury, fairness and justice require that the employer be reimbursed for the workers' compensation benefits he has paid or will pay. *Id.* There is no basis under Illinois law to hold that the alleged conduct on the part of MTRMA, even if true, outweighs the absolute right, pursuant to statute, that MTRMA has to reimbursement of its lien and the public policy underlying that right.[5]

---

[2]Section 8(a) of the Act provides that the employer pay necessary medical expenses for an injured employee. 820 ILCS 305/8(a) (West 2016).

[3]Illinois courts have consistently treated the employer and its insurance carrier as interchangeable for purposes of protecting a lien pursuant to section 5(b) (see, *e.g.*, *Brandt v. John S. Tilley Ladders Co.*, 145 Ill. App. 3d 304, 308 (1986)), and the Estate does not argue otherwise in this case.

[4]Subject to the employer's contribution to the attorney fees and costs necessary to pursue the third-party claim, pursuant to subsequent language in section 5(b), to be detailed below.

[5]To recap, the alleged conduct on the part of MTRMA consists of the following: that it failed to cooperate in the Estate's investigation, failed to pay the full amount of weekly benefits, engaged in *ex parte* communications with the decedent's widow, and insisted on partial satisfaction of its lien from the Measel settlement. As to MTRMA's insistence on partial satisfaction of its lien from the Measel settlement, as explained in this opinion, MTRMA was within its rights. With regard to the other allegations of misconduct on the part of MTRMA, we note that the law provided the Estate with a method

¶ 19    The Estate did not cite, to the circuit court or on appeal, any Illinois case that suggests that a circuit court has the power to limit or strike an employer's lien based on conduct on the part of the employer or its insurer. Every Illinois case cited by the Estate on this point either had nothing to do with the conduct of an employer or its insurer or did not deal with a workers' compensation lien. The only cases cited by the Estate in support of its position come from Delaware and Pennsylvania, and the Estate emphasizes the Delaware Supreme Court's opinion in *Baio v. Commercial Union Insurance Co.*, 410 A.2d 502, 506 (Del. 1979), supports the circuit court's order. We find this case to be unpersuasive and distinguishable.

¶ 20    In *Baio*, the workers' compensation insurer for the injured employee also was the insurer for one of the third-party tortfeasors. *Id.* at 504. Although the insurer first joined the injured employee as a plaintiff in the third-party action, once it discovered it was the commercial liability carrier for one of the defendants, the carrier "switched sides," defending its insured against the injured employee's third-party claim. *Id.* In so doing, the Delaware Supreme Court held that the carrier waived its right to recover its workers' compensation payments from the employee's recovery from the other defendants in the third-party action because it effectively blocked the employee from recovering against its insured. *Id.* at 507-08. Two justices dissented, finding that workers' compensation is an exclusive statutory remedy dependent for its proper functioning on a fixed system of statutory rights, remedies, and liabilities and disagreeing with the majority's application of " 'equitable principles' " in such a context. *Id.* at 508 (Quillen, J., dissenting, joined by McNeilly, J.).

¶ 21    In the case at bar, the conduct on the part of MTRMA that the Estate claims entitles it to an equitable extinguishment of MTRMA's statutory lien falls far short of the conflict of interest

of addressing each of these issues as they presented themselves throughout the course of the workers' compensation proceedings and the Indiana action.

situation addressed by a split decision of the Delaware court in *Baio*, which that court found amounted to a waiver of the lien. In addition, Delaware's statute does not go as far as the Illinois statute in requiring the circuit court to protect the employer's lien in a third-party action or providing that a settlement that does not have the employer's consent is invalid. See Del. Code Ann. tit. 19, § 2363 (West 2016); *cf.* 820 ILCS 305/5(b) (West 2016).[6] We agree with MTRMA's position on appeal that the differences in the character of the alleged conduct at issue on the part of MTRMA, as well as differences in the language of the statutes in Delaware and Illinois, provide solid reasons for this court to decline to rely upon *Baio* to uphold an unprecedented extinguishment of the workers' compensation lien to which MTRMA is entitled as per the directive of section 5(b) of the Act. 820 ILCS 305/5(b) (West 2016). Accordingly, we must reverse the circuit court's order extinguishing MTRMA's lien.

¶ 22    Our decision follows well-established precedent interpreting the plain meaning of section 5(b) of the Act, which imposes upon the circuit court a duty of protecting the employer's lien. See, *e.g.*, *Freer v. Hysan Corp.*, 108 Ill. 2d 421, 426 (1985); *Silva v. Electrical Systems, Inc.*, 183 Ill. 2d 356, 364 (1998) ("we have no authority to depart from the plain language of [section 5(b) of the Act] by reading into it exceptions, limitations, or conditions that the legislature did not express"); *In re Estate of Dierkes*, 191 Ill. 2d 326, 332 (2000) (an employee is entitled to retain only that portion of a recovery from the third-party tortfeasor that exceeds the workers' compensation benefits he received). We turn, then, to directions on remand.

---

[6]While the Delaware statute simply provides that an injured employee who recovers from a third party must reimburse the employer or its workers' compensation carrier for any amounts paid for workers' compensation, section 5(b) of the Act provides that if an injured employee brings a third-party action, the employer has the following rights: "The employer may, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of employers, such consent is not required where the employer has been fully indemnified or protected by Court order." 820 ILCS 305/5(b) (West 2016).

¶ 23 After providing for a lien on behalf of the employer on any recovery an injured employee receives from a third-party tortfeasor, section 5(b) provides as follows:

> "Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 2016).

¶ 24 Here, MTRMA's lien was partially satisfied by the earlier $100,000 Measel settlement, and MTRMA paid its 25% of attorney fees as well as its *pro rata* share of costs on that amount. Accordingly, in adjudicating MTRMA's lien on remand, this must be taken into account. In addition, MTRMA's future liability to the decedent's widow is required to be considered in adjudicating the lien, and MTRMA's suggestion that this take the form of deductions from future payments, except 25% for attorney fees, has a basis in Illinois law in that it may be considered as a method for adjudicating the lien as to future workers' compensation payments for which MTRMA is liable. See *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 10 (citing *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407, 418 (1990)). Of course, if MTRMA has paid further benefits to the decedent's widow since the circuit court erroneously extinguished the lien, those should be taken into account as well. Accordingly, on remand, the circuit court will need the benefit of updated briefing from the parties on the proper calculation of the lien, including future payments, as well

12

as a new hearing.[7] Finally, we note that MTRMA requested sanctions against the Estate, pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013). On remand, the circuit court should reconsider MTRMA's request in light of this opinion and the language and spirit of Rule 137.

¶ 25                                    CONCLUSION

¶ 26    For the foregoing reasons, the August 4, 2017, order of the circuit court of Effingham County, which struck, in its entirety, MTRMA's workers' compensation lien, is reversed, and this cause is remanded with directions that the circuit court, after the benefit of further briefing and a new hearing, adjudicate MTRMA's lien in its entirety in accordance with Illinois law and reconsider MTRMA's motion for Rule 137 sanctions in light of this opinion.


¶ 27    Reversed and remanded with directions.

---

[7]We note that after the circuit court requested briefing on the calculations required to adjudicate MTRMA's lien, the Estate simply filed another brief requesting the lien be extinguished. On remand, if the Estate chooses to submit a brief to the circuit court, the brief should contain a good-faith argument regarding the proper calculations for the reimbursement of the lien, according to Illinois law.

2018 IL App (5th) 170342

NO. 5-17-0342

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF ARNOLD O. REXROAD, SR. | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| | ) ) ) | No. 12-P-57 |
| (Estate of Arnold O. Rexroad, Sr., Appellee, v. Mid-West Truckers Risk Management Association, Intervenor-Appellant). | ) ) ) ) | Honorable Daniel E. Hartigan, Judge, presiding. |

---

**Opinion Filed:**        May 15, 2018

---

**Justices:**        Honorable James R. Moore, J.

Honorable Thomas M. Welch, J., and
Honorable David K. Overstreet, J.,
Concur

---

**Attorneys for Appellant**        James M. Kelly, Jason W. Jording, James Kelly Law Firm, 7817 Knoxville Avenue, Peoria, IL 61614

---

**Attorneys for Appellee**        Brian M. Wendler, Angie M. Zinzilieta, Paul E.H. Rademacher, Wendler Law, P.C., 900 Hillsboro Avenue, Suite No. 10, Edwardsville, IL 62025

---