OPINION OF THE COURT
Herbert Kramer, J.
Does any duty beyond mere payment devolve upon an insurer who receives a loan receipt executed by its insured, purporting to give it exclusive control over the claims of the insured?[1]
*298 In a case of first impression in the State, this court holds that a duty of good faith is created.
BACKGROUND
During the critical period, two pleasure craft were docked alongside one another. Each was insured for the perils pertinent hereto by virtually identical carriers.
Due to the alleged negligence of the defendant boat owner, a fire erupted on his craft severely damaging the plaintiff’s boat. The plaintiff’s insurer exhausted its coverage by payment and obtained the afore-mentioned loan receipt, giving it control over any ensuing right of action.
The plaintiff boat owner, having suffered damages more than double its insurance coverage, eagerly awaited the onset of suit by his insurer’s attorney. Plaintiff alleges that due to the identity of the insurers, no suit was brought.
In the inevitable action brought by attorneys engaged by the plaintiff for the unpaid damages the insurers were made parties defendant.
The complaint seeks damages including attorney fees for failure of the insurers to subrogate and otherwise attend to the claims of the plaintiff.
The insurers bring this motion for summary judgment and dismissal on the grounds that the policy obligation ceased upon payment to the extent of policy limits.
DISCUSSION
Historically, subrogation was an equitable right which prevented a double recovery against the insurer and wrongdoer (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37; Compania Anonima Venezolana De Navegacion v Perez Export Co., 303 F2d 692; 57 NY Jur, Subrogation, § 4; 31 NY Jur, Insurance, § 1620). Upon payment to its insured, the insurer assumed the latter’s full claim against a negligent party, at a time when causes of action could not be split. Originally, suit brought thereafter by the insurer was done in its own name. Often this *299 meant the insurance company had to sue an individual and thus try its case before an unsympathetic.jury. (Merrimack Mfg. Co. v Lowell Trucking Corp., 182 Misc 947; 31 NY Jur, Insurance, § 1622.)
In order to avoid this drawback, insurers began requiring loan receipts upon payment. Suit could then properly be made in the name of the insured.[2] Upon recovery, the loan was to be repaid to the insurer interest free, with the insured retaining any excess. (Merrimack Mfg. Co. v Lowell Trucking Corp., supra; 31 NY Jur, Insurance, § 1622.)
The development of and resort to the loan receipt created a right in law with the advantages of subrogation in equity, but with fewer of its disadvantages. (16 Couch, Insurance [2d ed], § 61:3.)
Significantly, only subrogation in equity requires the insurer to do equity. (Seely’s Son v Fulton-Edison, 52 AD2d 575; Dominion Fin. Corp. v 275 Washington St. Corp., 64 Misc 2d 1044; Travelers Ind. Co. v Peacock Constr. Co., 423 F2d 1153; Skauge v Mountain States Tel. & Tel. Co., 172 Mont 521; National Sur. Corp. v First Nat. Bank of Prestonsburg, 278 Ky 273; Standard Ace. Ins. Co. v Pellecchia, 15 NJ 162.)
Here, however, subrogation arises out of an agreement and “the rights of the parties are controlled by the contract rather than the equities normally prevailing”. (16 Couch, Insurance [2d ed], § 61:3, p 239.) The loan receipt gave the insurer total control over any action against the negligent party, including the right to compromise or settle. Therefore, the defendant contends that it was in no way obligated to subrogate or attend to the claims of the insured.
Where insurers are given total control over the disposition of claims by or actions against their insureds, any decision by the insurers to litigate or settle must be made in good faith. This good-faith obligation exists notwithstanding the unlimited control over such decisions given the insurer in the policy. (Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427; Best Bldg. Co. v Employers’ Liab. Assur. Corp., 247 NY 451 ; Auerbach v Maryland Cas. Co., 236 NY *300 247; Knobloch v Royal Globe Ins. Co., 46 AD2d 278, revd on other grounds 38 NY2d 471; Garcia & Diaz v Liberty Mut. Ins. Co., 147 NYS2d 306; Brunswick Realty Co. v Frankfort Ins. Co., 99 Misc 639; Brown v United States Fid. & Guar. Co., 314 F2d 675; 31 NY Jur, Insurance, § 1319.)
The preclusion of suit for the unreimbursed portion of the damages because of the coincidental identity of relevant insurers would follow from a literal reading of the loan receipt. But this result is so drastic that it has not been advanced by the insurer. Only the requirement of good faith can protect the insured from the otherwise permissible prohibition of suit at the insurer’s unbridled discretion.
Similarly, unless good faith is read into the loan agreement, we are left with the problem of identifying the consideration flowing from the insurer to the insured. There is no contractual reference to the loan agreement within the relevant portion of the insurance policy. The only stated consideration was the money which presumably the insured was otherwise entitled to under the contract of insurance. Thus, the subscription of the loan receipt by the insured was gratuitous. The common-law right of subrogation with its good-faith requirement cannot be transmuted into a loan receipt cognizable in law without either carrying forward the obligation of good faith or some additional consideration.
Rightfully, every insurance contract in fact contains an implied covenant of good faith (7 Williston, Contracts [3d ed], § 914). It is especially important to scrutinize the relevant conduct where the interests of the insured and insurer diverge, or appear to do so, as for example where claims against the insured or by the insured are for amounts above the coverage limits. In this context good faith has been defined so as.to obligate the insurer to consider the interest of the insured equally with its own interest as a defendant when it makes the decision to litigate or settle (Brown v United States Fid. & Guar. Co., supra, p 678, interpreting New York law; Harris v Standard Acc. & Ins. Co., 191 F Supp 538, 540, revd on other grounds 297 F2d 627, cert den 369 US 843). Stated differently, good faith would dictate that the insurer act only as *301 a reasonable person in the position of the insured with significant assets would under the circumstances, without regard to the question of or amount of insurance (Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv L Rev 1136, 1148).
Moreover, in addition to the good-faith obligations of the contract, the conflict of interest itself will impose equitable obligations upon the insurer (14 Couch, Insurance [2d ed], § 51:79). In a similar case the court stated: “that if an insurance company which is in such a situation [of conflict], expects to get an advantage or benefit from the litigation of a party whom it elects to oppose in that litigation, it must act equitably towards him. Equitable conduct might include, for example, the maintenance of separate files, the employment of separate counsel”[3] (Baio v Commercial Union Ins. Co., 410 A2d 502, 508, n 6 [Del]; emphasis added).
The insurance policy creates an obligation of good faith — the stricture of the loan receipt upon the activities of the insured in pursuing even his unreimbursed claim for damages additionally creates an obligation of good faith and finally, the conflict of interest creates yet another obligation of good faith.
The confluence of good faith at each step of the analytic process should and does impel this court’s finding of the obligation to act in good faith, under the circumstances at bar. Thus, this court holds that the insurers were obligated to provide the plaintiff insured with independent counsel, to keep separate files, and to provide the plaintiff insured with the results of any investigations pertinent to his claim.
In the case at bar the loan agreement redefined the relationship between the insured and insurer beyond mere payment. The underlying insurance contract which cre *302 ated this relationship should similarly be read in conjunction with the loan agreement. There is no reason in law or logic why the good-faith duty should differ when the posture of the insured is that of plaintiff, rather than defendant. Thus, this court holds that the insurers were under a good-faith obligation to act as a reasonable uninsured litigant in deciding whether or not to pursue its claim.
It is at best questionable whether this standard was met in the case at bar. In addition, the plaintiff alleges that the insurer failed to provide him with an attorney, a copy of the policy or the results of its investigation into the fire. Further, there is no indication that separate files were kept. Since the insurer may have breached its obligations toward the insured, the insurer was properly joined as a defendant and therefore the motion to dismiss is denied. In accordance with this opinion, summary judgment is denied until an appropriate factual showing is made.
There remains an issue, not raised by the parties, as to whether by their alleged inequitable conduct the insurers have waived their right of subrogation. Where insurers chose to take no part in actions brought by their insureds it has been held that such insurers may have waived their right to subrogation (Sun Ins. Off. v Hohenstein, 128 Misc 870; Hedgebeth v Medford, 74 NJ 360; Skauge v Mountain States Tel. & Tel. Co., 172 Mont 521, supra; 16 Couch, Insurance [2d ed], § 61:44; 6A Appleman, Insurance Law & Practice, § 4096). Although these cases involved equitable, as opposed to contractual subrogation, they are applicable here as equity was reinserted due to the conflict of interest, as previously indicated.
The insurer may have also waived its contractual right of subrogation. The court in Baio v Commercial Union Ins. Co. (410 A2d 502 [Del], supra), held that the insurer, by its actions, waived a statutory right of subrogation. The court reasoned that just as one may waive a constitutional right, one may waive a statutory right (410 A2d, at p 508). Extending this reasoning, the actions of the insurer in the present case may be sufficient for a finding at trial that they waived their contractual right of subrogation.
The plaintiff brought this action to recover only those losses in excess of the insurance received. If in fact plaintiff *303 is able to substantiate a departure from the good-faith requirement by the insurer, plaintiff may be entitled to damages for attorney’s fees. Furthermore, the insurer may have waived its right of subrogation. Plaintiff may amend his complaint to include all losses claimed, whether reimbursed or not, in accordance with this opinion. The motion by the defendant to dismiss the claim against the insurer for attorney’s fees is denied. This matter may be severed at the discretion of the Trial Judge.

. The loan receipt acknowledges the payment of $24,750 to the insured “as a loan without interest repayable only in the event and to the extent of any net recovery the undersigned may make from any person * * * causing or liable for the loss or damage to the property * * * and as security for such repayment the undersigned hereby pledges to the said: ‘Company’ all his * * * claims against said person ***
“The undersigned covenants that no settlement has been made * * * and no release has been given * * * and that no such settlement will be made, nor release given without the written consent of the said Company; and the undersigned covenants and agrees to cooperate fully with the said Company * * *
“In further consideration of said advance the undersigned *** hereby appoint(s) * * * the said ‘Company’ * * * his * * * agent(s) and attorney(s) in fact with irrevocable power *298 to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his * * * name, but at the expense of the said ‘Company’, any and all legal proceedings that the said ‘Company’ may deem necessary to enforce such claim * * *
“Any legal proceedings are to be under the exclusive direction and control of said ‘Company’ ” (emphasis added).

. In New York, however, the need for such an arrangement is obviated by CPLR 1004.

. In Baio, the plaintiff insured received a payment under workers’ compensation. He then commenced an action against the two negligent parties, one of whom was also insured by the carrier that paid the workers’ compensation benefits. The insurer sided against the plaintiff insured, resulting in a verdict only against the second defendant. The court refused to enforce the carrier’s statutory right of subrogation due to its position adverse to its insured (see, also, Arendas v Rich & Co., 220 F Supp 957).