Scott A. DAVENPORT,
Appellant (Plaintiff),

v.

Howard C. EPPERLY, Jr., and Robert
Cochrane, Carbon County Coal
Company, Appellees (Defendants).

No. 87–56.

Supreme Court of Wyoming.

Nov. 3, 1987.

George Santini of Charles E. Graves and Associates, Cheyenne, for appellant.

Catherine MacPherson of Johnson, Mac-Pherson & Noecker, Rawlins, for appellees.

Before BROWN, C.J., THOMAS, URBIGKIT and MACY, JJ., and LANGDON, District Judge.

BROWN, Chief Justice.

Appellant Davenport contends that appellees Epperly and Cochrane intentionally interfered with his employment contract. The district court granted summary judgment in favor of appellees and appellant appeals.

Appellant states one issue:

"Are co-employees subject to liability for intentional interference with an employment contract between an employee and their common employer?"

Answering the issue posed by appellant in the affirmative would not dispose of this case. He argues principles other than those suggested by his statement of the issue.

Appellees present the issues as:

"1. Was the entry of an order granting summary judgment proper, i.e., were there no genuine issues of material fact and were the defendants entitled to judgment in their favor as a matter of law on the claim of intentional interference with contract?

"2. Is a co-employee, who holds a supervisory position, as an agent of the company, and whose job duties require him to terminate and discipline employees, subject to liability for intentional interference with contract between another employee and their common employer?"

We will affirm.

Before October 24, 1985, both appellant and appellees were employed by Carbon County Coal Company. Appellee Cochrane was the training coordinator while appellee Epperly acted as mine superintendent.

On October 19, 1985, Cochrane saw Davenport hunting elk. At the time, appellant was receiving worker's compensation benefits and was on the employer's salary continuance program pending his return to work. On the salary continuance program, the employer pays the difference between the worker's compensation payment and the regular salary of the worker. Under the company's salary continuance program, disabled employees are required to report to the mine each work day at 9:00 a.m. October 19 was a Saturday, and ordinarily would have been Davenport's day off. The company had no written rules, policies or procedures limiting what employees on salary continuation could or could not do with the exception of requiring that said employees "report in."

On the following Monday, Cochrane reported to Epperly that he had seen Davenport hunting elk on October 19. Based on this report, a decision was made to recommend Davenport's termination. Joel Strid, the general manager of the mine, approved the termination letter drafted by Epperly. In the letter, Davenport was informed that he was being terminated for the following reasons:

"Your misrepresentation of facts in regard to your ability to return to work from your disability status and to perform the duties and responsibilities of your job.

"Your misrepresentation of facts in regard to your disability status which resulted in your continuing to receive salary continuation benefits.

"Your use of time off, with the company's salary continuance program, to engage in activities which are contrary to the intent of this program which indicates a discrepancy in your disability status."

While at a meeting with Epperly and the employee relations manager on October 24, 1985, Davenport was told that he was discharged. At that time, he protested the discharge on grounds that he went hunting with his doctor's verbal approval. He said he had exercised caution to avoid reinjury while elk hunting and transporting the meat back to his vehicle. Despite these protests, the termination was not rescinded; however, Davenport was told that if he obtained a written confirmation from his physician that he had permission to go elk hunting, the company would reconsider its decision. Davenport made numerous requests for such a letter from his treating physician but no letter was provided. However, in his deposition, Dr. Robert J. Curnow stated that he verbally approved appellant's hunting trip.

Appellant filed suit against Cochrane and Epperly alleging "intentional interference with contract." The trial court granted summary judgment in favor of appellees, resulting in this appeal.

Wyoming does recognize the tort of "intentional interference with contract." We said in *Toltec Watershed Improvement District v. Johnston*, Wyo., 717 P.2d 808, 813–814 (1986):

"Tortious interference with a contract is defined as:

" 'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other

from the failure of the third person to perform the contract.' Restatement (Second) of Torts § 766, p. 7 (1979). "In an interference with contract action, *Board of Trustees of Weston County School District No. 1 v. Holso*, Wyo., 584 P.2d 1009, 1016–1017 (1978), we said that the necessary elements of proof were:

" '(1) the existence of a valid contractual relationship or business expectancy;

" '(2) knowledge of the relationship or expectancy on the part of the interferor;

" '(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

" '(4) resultant damage to the party whose relationship or expectancy has been disrupted.' "

Although Wyoming recognizes the tort of intentional interference with contract, we hold that the trial court properly granted appellee's motion for summary judgment. Rule 56(c), Wyoming Rules of Civil Procedure, provides that summary judgment " * * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *." The court granted summary judgment to appellees based on depositions, affidavits and stipulations contained in the pretrial order.

This court's standard for reviewing the propriety of summary judgment is well established. *England v. Simmons*, Wyo., 728 P.2d 1137 (1986). The initial burden is on the movant to show that there is no genuine issue of material fact. *Fiedler v. Steger*, Wyo., 713 P.2d 773 (1986). Once that showing is made, it is incumbent upon the party opposing the motion to come forward with specific facts to show that there is a genuine issue of material fact. *Bettencourt v. Pride Well Service, Inc.*, Wyo., 735 P.2d 722 (1987); and *Bryant v. Hornbuckle*, Wyo., 728 P.2d 1132 (1986). Conclusory affidavits are insufficient and specific facts must be shown. *Blackmore v.*

*Davis Oil Company*, Wyo., 671 P.2d 334 (1983).

In *Cordova v. Gosar*, Wyo., 719 P.2d 625, 634 (1986), we set forth a six-stage analysis normally used in determining whether summary judgment was properly entered by the district court. These six stages include:

"1. Legal sufficiency of the complaint.

"2. Procedural sufficiency of the motion for summary judgment and attached affidavits and deposition material.

"3. Substantive sufficiency of the affidavits to initially support the motion.

"4. Procedural sufficiency of responsive affidavits.

"5. Substantive legal issue disposition.

"6. Substantive sufficiency of responsive affidavits."

We will discuss this *Cordova* case following this six-stage analysis.

Appellees do not question the legal sufficiency of the complaint, and summary judgment was not granted because of any deficiency or flaw in the complaint. We therefore need not discuss stage one of the summary judgment analysis of the *Cordova* case.

Stage two of the analysis deals with the procedural sufficiency of the motion for summary judgment and the attached affidavits and deposition material in support of the motion. Appellant murmurs briefly about the affidavit of Epperly being filed a week after the motion for summary judgment; however, nothing in Rule 56, W.R. C.P., precludes filing a supporting affidavit after the motion for summary judgment has been filed. Appellant's complaint as to the timeliness of Epperly's affidavit is raised for the first time on this appeal; the issue was not raised at trial. An issue not called to the attention of the trial court will not be considered on appeal. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981).

In any event, appellant was not denied an opportunity to respond to meet the contents of the Epperly affidavit. The motion for summary judgment was filed October 17, 1986. The Epperly affidavit was filed

October 23, 1986. Appellant submitted materials in opposition on November 12 and 14, 1986, and on December 9, 1986, the day the motion for summary judgment was heard.

■ Appellant further argues that his motion to strike the Epperly affidavit on the basis that it was hearsay, and that it did not comply with the requirement that affidavits be made on personal knowledge containing facts which would otherwise be admissible in evidence, was not ruled upon by the district court. Appellant failed to call up the motion to strike for hearing as contemplated by Rule 301, Uniform Rules for the District Courts of the State of Wyoming. He also neglected to call the motion to the attention of the district court at the hearing on the motion for summary judgment. We need not consider on appeal questions not properly raised in the trial court. *ABC Builders, Inc. v. Phillips, supra.*

■ Stage three involves sufficiency of the affidavits and depositions to support the motion for summary judgment. Appellees must make a prima facie showing that there are no genuine issues of material fact and that when applicable law is applied to the facts, movants are entitled to summary judgment as a matter of law. *England v. Simmons, supra.*

Cochrane's deposition indicates that he was called into the office, that he reported what he had observed, and that he did not know the reason for Davenport's termination until four months after it occurred; however, he did know of the termination the following Thursday. In the deposition he recites what he observed, did, and discussed with Davenport and recites what he reported and did with regard to the company. It appears from the affidavit that Cochran had *no* part in recommending Davenport's termination or desiring termination. Epperly stated, in his affidavit, that he was of the opinion that Cochrane did not have malice or intent to harm appellant.

The facts brought to the trial court's attention by Epperly in his affidavit pertain to his job assignment and duties as mine superintendent. At the time Epperly recommended appellant be terminated he was acting as an agent for the company, performing duties delegated to him. The affidavit also recites the information he received from Cochrane. Epperly further states that he received no benefit personally by recommending that Davenport be terminated; it was just part of his job. The affidavits and depositions submitted by appellees make a prima facie showing that they are entitled to a summary judgment.

With respect to stage four of the summary judgment analysis, the sufficiency of responsive affidavits, appellees make no objection to materials submitted by appellant.

Stages five and six of the summary judgment analysis in the Cordova case will be discussed together. Appellant fails to produce specific facts which show Cochrane did anything more than observe appellant after his kill and respond to questions asked of him. No specific facts were presented that show Cochrane knew Davenport had a "contract," although he knew Davenport worked at the company; or that he intended to have Davenport terminated by providing information about what he observed and heard from Davenport; or that he influenced the company to terminate Davenport by providing information. There are no contradictory facts or inferences that can be drawn from Davenport's version of the facts. Moreover, appellant's "facts" are not specific and do not focus on the issue of interference with contract.

Appellant attempts to fashion a factual dispute by denying that he told Cochrane he had meat in his backpack as alleged by Cochrane and further denies that he had meat in his backpack. This dispute is not one regarding a material fact. The discharge of appellant was not based on whether or not he had meat in his backpack. The feeble nature of appellant's complaint against Cochrane is apparent from his deposition. While being deposed, appellant was asked:

"Q. Okay. What specifically did Mr. Cochrane do that was wrong?

"A. [by Davenport] Well, as I see it, it wasn't any of his business what I was doing. And I wasn't doing anything wrong in the first place, so I would say it was wrong for him to run in and try to better himself at the discretion (sic) of others.

"Q. Is there anything else that you think Mr. Cochrane did wrong?

"A. That's all that I think he did wrong."

Epperly asserted in his affidavit that it was his job to terminate and discipline employees, and that he was acting in such capacity when he terminated Davenport. He recites the information he received from Cochrane, which was essentially the same as that reported by Davenport in his deposition. Davenport fails to present specific facts to show Epperly acted in other than his official capacity. Nor were there any specific facts produced to show an improper motive for recommending appellant's termination.

Appellant stated in his affidavit that because the company had received a large judgment, it had greater incentive to terminate him. We fail to see any connection between this judgment and a motive for either Epperly or Cochrane to seek the discharge of appellant. Appellant strains mightily to fashion a material issue of fact out of this circumstance.

The weakness in appellant's cause of action against Epperly was disclosed in his deposition. In a dialogue with appellees' attorney, appellant was asked:

"Q. So I can have it in one concise place to the extent that it's possible, would you tell me what specifically you say Howard Epperly did wrong?

"A. [by Davenport] He relied upon things told to him by hearsay from Mr. Cochrane in his letter regarding my termination. I mean, I was never asked about anything other than if I went. And he just went entirely on what Mr. Cochrane had told him.

"Q. Is there anything else?

"A. That's it."

The crucial facts that must be shown by appellant to be in dispute must relate to whether or not appellees intentionally and improperly interfered with the performance of a contract between appellant and his employer by inducing or otherwise causing the employer not to perform the contract. The facts developed in appellant's affidavit, and otherwise, are substantially the same as the general allegations contained in the complaint. The difference, if any, rather than going to the issue of interference with contract, went instead to the discharge made by the company and whether there was sufficient cause for the termination or whether it constituted a breach of employment contract. Wrongful discharge, however, is not the issue here.

In summary, the materials submitted by appellant in opposition to the motion for summary judgment were not adequate to preclude summary judgment. The affidavits and materials contained conclusions, inadmissible statements relative to the judgment the company had received, and failed to set forth specific facts relative to the intentional interference with contract claim. An employee of a company is not liable for the company's breach of contract on the theory that the employee induced such breach if he acts in his official capacity, on behalf of the company, and not as an individual for his own advantage. *Phillips v. Montana Education Association*, 187 Mont. 419, 610 P.2d 154 (1980); 45 Am. Jur.2d, Interference § 54, p. 327 (1969).

The general rule set out above is applicable to the case before us. Epperly was acting in his official capacity on behalf of the company when he recommended the discharge of appellant. He was not acting in an individual capacity or for his own benefit. Appellant said the only thing Cochrane did wrong was not mind his own business. We do not know of any authority that supports a cause of action against a co-employee who does not mind his own business. Appellant has produced no evidence to show that Cochrane had an improper motive in reporting to the company, nor is there a showing that Cochrane induced the company to discharge appellant. Furthermore, there is no showing that

Cochrane gained any advantage by appellant's discharge.

Appellant failed to demonstrate to the trial court that there were material facts in dispute. Summary judgment was proper.

Affirmed.