Frank J. HATCH, III; Wendy Hatch; Frank J. Hatch, IV; and Frank J. Hatch, III and Wendy Hatch as next friends for their minor children, Anna Corinna Hatch; Robert Matthew Hatch; and Michael Logan Hatch, Appellants (Plaintiffs),

v.

STATE FARM FIRE AND CASUALTY COMPANY, a corporation; and Garry Kitchens, Appellees (Defendants).

No. 92–22.

Supreme Court of Wyoming.

Dec. 10, 1992.

John E. Stanfield of Smith, Stanfield & Scott, Michael Schilling, and Thomas J. Rardin, Laramie, for appellants.

Weston W. Reeves, Casper, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, JJ., ROONEY and BROWN, Ret. JJ.

BROWN, Justice (Retired).

This case involves a suit by a State Farm Fire and Casualty Company policy holder against the insurer for policy benefits. The suit also alleges that numerous torts occurred in connection with the insurer's investigation and handling of a claim for loss sustained following a fire in the insured's home. The trial court granted summary judgment to the insurance company and individual defendants on all claims except the claim for policy benefits.

Appellants state that the issues are:

1. What are the requirements for the "fairly debatable" defense and what are the parameters of the defense?

2. When the evidence is properly construed on the basis of the summary judgment rules, could reasonable minds have reached different conclusions and inferences from the facts as to whether State Farm should be insulated from liability for all its actions and omissions on the basis of the "fairly debatable" defense?

3. If an insurance company is able to produce some factual support for its refusal to pay benefits, does that automatically foreclose any jury inquiry into: (1) the validity of that factual support; and (2) an evaluation of that support as compared with those facts favorable to the insured's position?

4. Is the issue of whether an insurance company should be insulated from liability under the "fairly debatable" defense an issue of fact which is to be determined by the jury on the basis of appropriate instructions from the trial court—or is it purely a question of law for the trial court to decide?

5. Even if its refusal to pay the claim can be justified under the "fairly debatable" defense, does that also mean that the insurance carrier is also insulated from any liability whatsoever for the breach of its good faith/fair dealing duties regarding the manner in which it investigated and handled the claim and treated and dealt with its insured?

6. Were there disputed issues of material fact as to: (1) whether State Farm had civil liability for its actions and involvement in the criminal prosecution of Mr. Hatch; and/or (2) the manner in which State Farm employed its "cooperation clause" in order to search for and obtain evidence; and/or (3) the manner in which State Farm obtained statements and evidence to help the prosecutor; and/or (4) the manner in which State Farm turned over some of its evidence to the prosecutor and concealed other evidence?

7. Were there disputed issues of material fact as to whether State Farm was guilty of *"willful misstatement, attempted duress or malice"*—thus erasing any immunity State Farm might have from liability to the Hatches under the Wyoming Arson Reporting Immunity Act (§§ 6–3–108 to 6–3–109, WSA, 1977)?

8. When experts for the opposing sides disagree as to the facts or the conclusions to be drawn from the facts, does this present a disputed issue of fact which prevents disposition of the case by summary judgment?[1]

1. Appellees state that the issues are:
*With Regard to [Appellee] State Farm:*
1. Whether the denial of Appellants' claim for fire insurance benefits on the grounds of arson by an insured was fairly debatable so as to entitle State Farm to summary judgment on Appellants' bad faith tort claim.
2. Whether, notwithstanding a fairly debatable basis for denial of Appellants' claim, State Farm may be liable for what Appellants generally describe as unneighborly claims practices.
3. Whether State Farm was entitled to summary judgment on Appellants' 42 U.S.C., § 1983 civil rights claim because State Farm did not act under color of state law.
4. Whether State Farm was entitled to summary judgment on Appellants' claim of intentional infliction of emotion[al] distress.

We affirm in part and reverse in part.

A fire was discovered in the basement of appellants' house about 2:00 a.m. on August 4, 1987. The fire started in the southwest corner of the house. Gasoline was found in carpet samples after the fire. The nearest source of ignition was a wood-burning stove fifteen feet away which had a hot fire box twelve inches off the floor. Firemen found a gasoline container in the garage, lying on its edge under a chair, with the broad side against the garage wall. An explanation for how gasoline was detected in the basement was that the family dog knocked the gas can over and the contents ran through a crack in the garage floor, down the outside of the basement wall, then under the wall and into the basement.

Appellees' [State Farm's] claims specialist, appellee Garry Kitchens responded to notice of the fire; he was replaced five days later. He made no estimates, and did not review any work produced by State Farm's investigation nor participate in any decisions. Kitchen's replacement, appellee Dennis Murphy, continued the investigation of appellants' claim. He stated that his work represented his "best and most conscientious effort" and that his recommendations represented his "honest belief that Mr. Hatch started the fire in his house." Appellant Frank J. Hatch, III was charged with arson. An Albany County jury returned a not guilty verdict.

Appellants filed a lengthy civil complaint setting out eight causes of action. Later, a

*Issues Regarding [Appellee] Garry Kitchens:*
5. Whether Appellee Garry Kitchens was entitled to summary judgment because:
A. He did not participate in the investigation of the cause of the fire in Appellants' home and did not participate in the analysis of Appellants' claim or the decision to deny it; and
B. Because Appellants have no viable claim against him on the tort of intentional infliction of emotional distress.
*Issues Regarding [Appellee] Dennis Murphy:*
6. Whether Appellee Dennis Murphy was entitled to summary judgment because:
A. Appellees have not refuted the prima facie showing that he acted in good faith; and
B. Because Appellants have no viable claim against him for the tort of intentional infliction of emotional distress.

ninth cause of action was added by amendment. Aside from the first cause of action, "claim for policy benefits under the State Farm policy," the other eight listed causes of action essentially complain about bad faith. These separately listed causes of action complain of bad faith in various ways:

> Vicarious liability against all State Farm agents, adjusters, attorneys, employees and independent contractors for their actions and omissions under the doctrine of "Respondent Superior."

> Recovery of damages based upon the Plaintiffs' reasonable expectations of coverage under the State Farm policy.

> General breach of duty of good faith and fair dealing in investigating the Plaintiffs' claim and in denying the Plaintiffs' claim.

> Willful, wanton, intentional and malicious conduct in the investigation and ultimate denial of Plaintiffs claim and malicious defense.

> Liability under the Wyoming Insurance Code.

> Breach of express and implied warranties of merchantability associated with the Defendants' insurance product and breach of fiduciary duties.

> Deceptive and fraudulent inducement to its customers, the Hatches, in the advertising, marketing and sale by the Defendants of their insurance product.

> Violation and deprivation of the Plaintiffs' constitutional and civil rights as guaranteed by the United States and Wyoming Constitutions and under Federal Civil Rights legislation.

The issues specified by appellants in their appeal do not track the eight causes of action decided adversely to them on summary judgment. In the appellate brief, they do not address the issues they listed separately, but rather lump issues and causes of action together without logical, sequential argument. However, almost all the matters discussed, in simple terms, complain of bad faith. We will not try to address all the issues listed by appellants separately.

We have articulated the standard of review for a summary judgment many times. *See Hozian v. Weathermon*, 821 P.2d 1297 (Wyo.1991); *Wagner v. First Wyoming Bank, N.A. Laramie*, 784 P.2d 224 (Wyo. 1989); *Davenport v. Epperly*, 744 P.2d 1110 (Wyo.1987); *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704 (Wyo.1987); *England v. Simmons*, 728 P.2d 1137 (Wyo.1986); *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986).

Most of the tortious acts complained of were alleged to have been committed by the individual appellees Kitchens and Murphy, employees of State Farm. Appellee State Farm is responsible for this conduct under the doctrine of *respondeat superior.* State Farm does not seriously argue otherwise.

## I.

██ *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855, 860 (Wyo.1990) sets forth the standard by which appellants' bad faith claim is to be addressed. In that case, we adopted the test from *Anderson v. Continental Insurance Company*, 85 Wis.2d 675, 271 N.W.2d 368 (1978).

> Whether a claim is "fairly debatable" also implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded.

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. "Bad faith" by definition cannot be unintentional. "Bad faith" is defined as "Deceit; duplicity; insincerity." American Heritage Dictionary of the English Language (1969), p. 471. The same dictionary defines "deceit" as a "strategem; trick; wile" (p. 342), and duplicity as "Deliberate deceptiveness in behavior or speech." (P. 405)

> *Hilker, [v. Western Automobile Ins. Co.] supra*, 204 Wis. [1] at 15, 231 N.W.

257, 235 N.W. 413 [ (1930, 1931) ], emphasizes that bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated. While *Hilker* emphasizes the duty of ordinary care and reasonable diligence on the part of an insurer in handling claims, it is apparent from *Hilker* that the knowing failure to exercise an honest and informed judgment constitutes the tort of bad faith.

The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

It is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review. * * *

While we have stated above that, for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard of a reasonable basis for a denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

*Anderson,* 271 N.W.2d at 376–77 (some citations omitted).

The logical premise of the debatable (or arguable) standard is that if a realistic question of liability does exist, the insurance carrier is entitled to reasonably pursue that debate without exposure to a claim of violation of its duty of good faith and fair dealing.

*McCullough,* 789 P.2d at 860.

State Farm conducted an extensive investigation before denying appellants' claim. The investigation was assisted by two experts and a lawyer. The experts concluded that gasoline did not enter the basement from an accidental spill in the garage and that the gasoline in the basement was not accidentally ignited by the wood-burning stove.

In the arson charge, appellant Frank J. Hatch, III, was bound over for trial in the district court after a preliminary hearing. The trial court declined to grant motions of acquittal. Appellants retained Carroll N. Cloyd and offered his testimony as an "insurance expert." His opinions differed from the opinions of appellees' experts.

Appellants concede in their brief that "a jury may agree with State Farm's theory about the fire," and that "[t]he facts in this case are such that reasonable minds could reach different conclusions." During the hearing on the summary judgment, the court and counsel for appellants said:

[THE COURT] Do you have any evidence that in any way—are you alleging that in any way the expert who said that this was arson was in some way manipulated by State Farm to do that?

[COUNSEL FOR APPELLANTS]: No, Your Honor. * * *

\* \* \* \* \* \*

THE COURT: * * * but we have to assume experts will give expert opinion and it will be reliably truthful unless you can show they aren't.

[COUNSEL FOR APPELLANTS]: Well, if two qualified experts conflict diametrically, isn't that fairly debatable, your Honor?

THE COURT: That's my point.

State Farm is entitled to rely on the conclusion of the independent experts that the fire was of incendiary origin unless there is a showing that there was collusion between the experts and State Farm or that the experts knowingly made false reports. *Sutton v. Northern Insurance Company of New York,* 681 F.Supp. 1221, 1223 (S.D.Miss.1988). Appellants admit they can make no such showing.

In *Callioux v. Progressive Insurance Company,* 745 P.2d 838, 842 (Utah App. 1987), summary judgment was affirmed for

the insurance company which denied its insured's claim on the grounds of arson, where the insured had been tried for arson and acquitted. The Utah court said:

> [W]e conclude the undisputed facts before the court demonstrate that the Callioux could not have established their claim that Progressive in bad faith denied their first-party insurance claim. The Callioux' claim for insurance was fairly debatable, as indicated by a judicial finding of probable cause when David Callioux was bound over for trial for arson and insurance fraud, and again when the issue of his guilt or innocence was submitted to the jury at the conclusion of the trial. Both of these findings of probable cause support Progressive's suspicion that the fire which destroyed the Jeep was of incendiary origin by or at the direction of David Callioux. In addition, Ashby, the independent expert hired by Progressive, also concluded arson was the cause of the fire.

The Callioux case is remarkably similar to the case before us. In the case here, there was a judicial finding of probable cause when Frank J. Hatch, III, was bound over for trial for arson by the county court. Again, there was a determination of probable cause when the district court submitted the issue of arson to the jury and denied motions for judgment of acquittal. Both of these determinations support appellees' suspicion that the fire was of incendiary origin and that Frank J. Hatch was involved. Additionally, fire experts concluded that arson was the cause of the fire.

Conflicting opinions among experts regarding the cause of the fire is not a factual dispute and does not preclude granting a summary judgment on the issue of "fairly debatable defense." We affirm the district court on the issue of fairly debatable defense.

## II.

■ Appellants complain with respect to State Farm's actions and involvement in Mr. Hatch's prosecution for arson. Succinctly, appellants contend that appellees promoted the arson prosecution and em-ployed their time and resources in an attempt to obtain a conviction and thus avoid payment of the policy benefits.

Appellants do not designate as an issue the trial court's granting of summary judgment on their ninth cause of action—the alleged civil rights violation under 42 U.S.C. § 1983. In spite of this neglect, the issue of criminal prosecution is intertwined with alleged violation of civil rights under 42 U.S.C. § 1983 and we will address it accordingly.

Thomas W. Barb, Deputy County Attorney for Albany County, was prosecutor in the criminal proceedings against Mr. Hatch. He filed an affidavit which stated in part:

> 4. I was responsible for the filing and prosecution * * *.
>
> 5. I solely made the decision * * *.
>
> 6. * * * I have no recollection of speaking with any representative of State Farm Fire and Casualty Company prior to or at the time that the decision was made * * *. Nor do I have any recollection of speaking with any of the experts that were retained by State Farm * * *. I discussed the facts of the case with Detective Jim Kyritsis of the Laramie Police Department and Steve Stutzman of the Laramie Fire Department. From those discussions, I believed that Mr. Hatch had committed arson. * * *
>
> *   *   *   *   *   *
>
> 11. I asked the State Farm Fire and Casualty Company representative attending the preliminary hearing if he knew of any other experts. He replied in the negative. I subsequently received no information or suggestions from any representative of State Farm Fire and Casualty Company concerning an expert that could be employed by the prosecution.
>
> 12. In February of 1988, without recommendation or suggestion of anyone, I contacted the Dean of Petroleum Engineering at the University of Wyoming. I indicated to him that I wished to find a knowledgeable expert who could provide me with an independent evaluation of the

facts. I was referred by the Dean to Don Stinson.

13. * * * I gave Mr. Stinson complete access to all file materials * * *.

14. * * * I told him [Stinson] that I wished him to give me an independent opinion regardless of whether or not that opinion was favorable to the prosecution. After Mr. Stinson's review, Mr. Stinson told me that his opinion was that the fire was an act of arson. * * *

\* \* \* \* \* \*

20. * * * No one attempted to influence the decisions that I made.

This affidavit stands unrefuted and, this being so, is fatal to appellants' claims regarding appellees' promoting the prosecution of Mr. Hatch and their 42 U.S.C. § 1983 civil rights action.

To recover under 42 U.S.C. § 1983 (1988),[2] appellants must show that, while acting under color of state law, appellees deprived them of rights secured by the United States Constitution or federal law. In making their § 1983 claim, appellees essentially repeat the allegations of their unsuccessful malicious prosecution claim.[3] The civil rights count fails to state a claim

upon which relief can be granted because, among other things, it does not allege facts showing that State Farm acted jointly with state authorities to deprive appellants of their constitutional rights. Appellants ignore that essential element. Without such joint action, the essential "under color of state law" element is lacking. In fact, the unrebutted affidavit of the prosecutor negates any suggestion of joint action.

Appellants assert they were deprived of their constitutional rights to due process and against self-incrimination. They do not detail the self-incriminating statements they made. Mr. Hatch, himself, made statements to the police and testified at the preliminary hearing. Appellants allege that State Farm wrongly gathered evidence and "secretly provided" select portions of the material to prosecutors, while withholding exculpatory evidence, in order to instigate arson charges against Hatch. They do not allege that state prosecutors themselves participated in this scheme.

Appellants argue that State Farm "concealed its action under the so-called Arson Reporting Immunity Act."[4] To support

---

**2.** 42 U.S.C. § 1983 reads:

**Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**3.** On the 20th day of March, 1991, the trial judge granted partial summary judgment in favor of appellees on appellants' malicious prosecution and abuse of process claims.

**4.** The Arson Reporting Immunity Act, Wyo.Stat. § 6-3-109 (1988), states in pertinent part:

**Information provided by insurers; notice of non-accidental fires; release of information; immunity.**

(a) Upon receipt of a written request from an authorized agency, an insurance company shall release to the authorized agency all information requested by the agency relating to a fire loss. * * *

\* \* \* \* \* \*

(b) An insurance company which has reason to believe a fire loss was caused by other than accident shall notify an authorized agency in writing and upon request shall provide all information developed in the company's inquiry into the fire loss. Notice to any authorized agency is sufficient notice under W.S. 6-3-108 through 6-3-110.

(c) Upon request, an authorized agency may release to any other authorized agency information obtained pursuant to subsections (a) and (b) of this section.

(d) An insurance company which provided information to an authorized agency pursuant to subsections (a) and (b) of this section may request relevant information from an authorized agency. Within a reasonable time, the authorized agency may provide the requested information.

(e) Any insurance company or person acting in its behalf or authorized agency who releases information, whether oral or written, is immune from any liability arising out of a civil action or any penalty resulting from a criminal prosecution which occurs incident to the release of the information unless willful misstatement, attempted duress or malice is shown.

the claim that State Farm acted under color of state law, they cite the Immunity Act. They fail to elaborate further on the claim that State Farm and its agents acted under color of state law.

Appellants have not produced any evidence to overcome appellees' showing that the prosecutor acted independently. Appellants have failed to allege or prove any requisite "joint activity" between State Farm or its employees, and the state. Supplying of information concerning suspected arson to state authorities, standing alone, is not enough to amount to "joint activity."

In *Lee v. Town of Estes Park, Colorado*, 820 F.2d 1112 (10th Cir.1987), the court held defendants did not act under color of state law and thus no 42 U.S.C. § 1983 claim could be made against them even where, after making a citizen's arrest, defendant Lyngholm escorted plaintiff Frank Lee to the police station where the police charged Lee with disorderly conduct based upon Lyngholm's statements. The court found:

> While he [defendant Odd Lyngholm] was perhaps "insistent," Office Filsinger made the decision as to whether Lee should be charged with any offense, and, if so, what offense should be charged. * * * There is no suggestion in the record before us that there was any prearrangement between Lyngholm and Filsinger, or that they were somehow acting as a team.

*Id.* at 1115.

In coming to that conclusion, the court discussed the "two-part approach" to determine whether a defendant's action can be deemed under color of state law:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is other-

wise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Id.*, quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

In this case, State Farm's conduct, as alleged by appellants, satisfies neither part of the *Lugar* test. First, State Farm was not exercising "some right or privilege created by the State" when it turned over information from its investigation to state authorities. Rather, it was complying with the requirement set forth by state statute. Second, Hatch has made no allegations as to how State Farm acted together with, or received significant aid from, state officials in the process of allegedly infringing on his constitutional rights.

We affirm the trial court's granting of summary judgment on appellants' 42 U.S.C. § 1983 claim and appellants' claim that appellees promoted the prosecution of Mr. Hatch for arson.

### III.

We determined earlier in this opinion that appellees demonstrated that appellants' claim was "fairly debatable" and that no liability resulted from the denial of this claim. We have also determined that the trial judge was correct in granting summary judgment on appellees' 42 U.S.C. § 1983 claims and the claim that appellees promoted the prosecution of Mr. Hatch for arson. We now consider appellees' investigative tactics and their general handling of appellants' claim.

The independent tort of intentional infliction of emotional distress was adopted in Wyoming in *Leithead v. American Colloid Company*, 721 P.2d 1059 (Wyo.1986). The independent tort for violation of a duty of good faith and fair dealing in insurance policy application by the carrier to its insured was adopted in Wyoming in *McCullough*, 789 P.2d 855. The outrageous conduct charged in this case could arguably be

either the tort of intentional infliction of emotional distress or the tort of violation of a duty of good faith and fair dealing. We will consider these two torts together, realizing that other circumstances may very well require the focus be on one tort or the other. In other words, the tort of intentional infliction of emotional distress and the tort of violation of a duty of good faith and fair dealing are separate torts, depending on the circumstances. The question for us to determine now is: If the insurer demonstrates, as it has here, that denial of the claim is protected by the "fairly debatable defense," should it nevertheless be subjected to liability if its investigating, handling, and denying the claim violated the implied covenant of good faith and fair dealing?

[I]n a comprehensive, well-written article, Glenn E. Smith, JD, discusses some of the problems applying the theory of first-party bad faith. He cites examples of conduct and tactics for which first-party insurers have been held liable:

Inadequately investigating a claim [*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 157 Cal.Rptr. 482, 598 P.2d 452 (1979)], delaying payment of a first party claim [*Neal v. Farmers Insurance Exchange*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980 (1978)], forcing an insured to litigate or seek arbitration of a claim, knowing that it has no substantial grounds to reject the claim [*United Service Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974)], engaging in trickery or deception [*Timmons v. Royal Globe Insurance Company*, 653 P.2d 907 (Okla.1982)], deliberately misinterpreting records or policy provisions for the purpose of defeating coverage [*Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App.3d 376, 395–96, 89 Cal.Rptr. 78, 89 (1970)], using threats of dire consequences to force the insured to agree to an unfair settlement [*Mustachio v. Ohio Farmers Ins. Co.*, 44 Cal.App.3d 358, 118 Cal.Rptr. 581 (1975)], falsely accusing its insured of arson in defending a casualty claim [*Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)], exploiting the insured's vul-

nerable financial position following a loss covered by the policy [*Neal*, 148 Cal. Rptr. at 396, 582 P.2d at 987], making oppressive demands or imposing burdensome requirements not contained in the policy of insurance [*Davis v. Allstate Ins. Co.*, 101 Wis.2d 1, 303 N.W.2d 596, 600–01 (1981)], conditioning payment of the undisputed portion of the claim on the settlement of the disputed portion of the claim [*Vernon Fire & Cas. Co., v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 184 (1976)], abusing the arbitration process [*Rios v. Allstate Ins. Co.* 68 Cal.App.3d 811, 137 Cal.Rptr. 441 (1977)], retaliating against the insured for filing a claim by canceling his policy [*Spindle v. Travelers Ins. Co.*, 66 Cal.App.3d 951, 136 Cal.Rptr. 404 (1977)], abusing the insured's subrogation rights [*Faraino v. Centennial Ins. Co.*, 117 Misc.2d 297, 458 N.Y.S.2d 444 (1982)], and unfairly imposing a premium increase simply because the insured filed a claim [*Hebert v. Guastella*, 409 So.2d 375 (La.Ct.App.1982)]. * * *

* * * * * *

[A]n abuse of the insurer's right of subrogation [*Brunet v. American Ins. Co.*, 660 F.Supp. 843 (D.Vt.1987)], * * * spoliation of evidence [*Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Mut. Ins. Co.*, 146 Wis.2d 470, 431 N.W.2d 689 (1988)], an insurer's failure to respond to an insured's request for clarification of the latter's rights under the policy [*Carolina Bank & Trust Co. v. St. Paul Fire & Marine Co.*, 279 S.C. 576, 310 S.E.2d 163 (1983)], postclaim underwriting (*See* W.M. Shernoff, S.M. Gage & H.R. Levine, *Insurance Bad Faith Litigation* (1987)], unwarranted offsets [*Silberg v. California Life Ins. Co.*, 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974)], failure to inform the insured of remedial rights [*Sarchett v. Blue Shield*, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987)], or impeding an insured's recovery of an uninsured portion of the loss [*Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986)].

Smith, *Understanding the New Tort of First Party Bad Faith in Wyoming:*

*McCullough v. Golden Rule Insurance Company*, XXVI Land & Water L.Rev. 225, 244–68 (1991).

In opposition to appellees' motion for summary judgment, appellants filed affidavits, depositions and other materials. Appellants bring to our attention numerous matters contained in these instruments and argue that their content demonstrates violation of the duty of good faith and fair dealing. We will later recite alleged facts set out in the materials filed in opposition to motion for summary judgment, in a light most favorable to appellants and give them all favorable inferences that can be drawn from the facts. *Hozian*, 821 P.2d 1297. Furthermore, for purposes of testing the propriety of a summary judgment, we assume these facts to be true.

In appellants' first contact with State Farm, their representative, Mr. Kitchens, said, "Let me tell you that you're not going to get what you think you are going to get." Appellants were required to file an extremely detailed inventory of items that were in the house at the time of the fire, consisting of 275 pages. For example, they were told that they must list how many cornflakes were left in the cereal box before the fire, and how much salt was in the salt shaker. Appellants were threatened by State Farm representatives with the cooperation provision in the policy unless they did everything they were told. Appellants were required to make unreasonable reports, statements and inventories, even after State Farm had decided to reject their claim.

State Farm took over the Hatch house, ousted the Hatch family from possession, and searched the house from top to bottom. State Farm conducted several unsupervised searches of the home and entered the home without permission. State Farm would not allow appellants to have free access to their house for eight days after the fire (August 4–12). A State Farm representative told Mrs. Hatch that all they would ever receive for their belongings was the same price they could get for each item at a garage sale. Hatches were given an unrealistic deadline in which to file this inventory. A team of five State Farm representatives interviewed Mrs. Hatch four different times. One interview lasted five hours with no break for lunch. Mrs. Hatch characterized the State Farm representatives. as rude, abrupt, sarcastic, unprofessional, and hostile. Additionally, the sworn statements of the Hatch's twin boys, ten years old, were taken.

On August 12, 1987, Mr. Hatch was told the investigation was complete; nevertheless, State Farm representatives continued to enter the house into September. Mr. Hatch asked for a copy of State Farm's investigative reports. A copy was promised, but not timely delivered. Mr. Hatch asked appellee Murphy to send a copy of the investigative report to his lawyer. Murphy refused and said that Mr. Hatch would regret having retained an attorney. Murphy also said that State Farm would not have required an itemization of the property removed from the house if they had not contacted a lawyer.

Appellants charge State Farm with concealing information received from Northern Gas; also, exculpatory and other documents were alleged to have been withheld or concealed from the prosecutor in the arson case. State Farm required that appellants sign releases for creditors in and out of the state to give it information about the appellants. These creditors were then contacted. Medical releases were demanded from Mr. Hatch and one of his children; also, mental health records of a daughter were demanded about a problem in 1984. Mr. Hatch's military and employment records were demanded.

Appellants contend that the fire investigation was incomplete and/or biased in that the State Fire Marshal was never requested to investigate the cause or origin of the fire in order to get an independent view. During State Farm's investigation, a number of personal items disappeared from the home, including personal letters, photographs, financial documents, and diaries. Apparently, Mr. Murphy read Mrs. Hatch's personal diary.

In opposition to the motion for summary judgment, appellants filed the affidavit of a

claims manager, Cloyd, with thirty years experience. Cloyd identified thirteen areas in which State Farm's investigation and handling of appellants' claim did not meet industry standards. Mr. Cloyd's opinion has minimal value in summary judgment posture. However, with the evidence we have delineated, it tends to show that State Farm may have abused its duty of good faith and fair dealing. In *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz.1986), it was determined that expert testimony was admissible to show customs of the industry. The expert in *Rawlings* testified, among other things, that it was customary to turn over investigative reports to the insured.

■ Appellants argue that: "Even if the carrier is able to prove that its denial of the claim is protected by the 'fairly debatable defense'—it should still be subject to liability whenever a jury concludes that the manner in which it investigated, handled or denied the claim violated the implied covenant of good faith and fair dealing." We agree. The tort of violation of good faith and fair dealing is viable even though the express terms of the insurance contract are honored by the insurer. *Darlow v. Farmers Insurance Exchange*, 822 P.2d 820 (Wyo.1991); XXVI Land & Water L.Rev. at 244.

*McCullough*, 789 P.2d 855, established the principle that the duty of good faith and fair dealing emanates from the special relationship of the parties to the insurance contract, not from the express or implied provisions contained in the contract. Therefore, it is the conduct of one party toward the other that is proscribed by the duty, even if such conduct is not elevated by the terms and provisions of the insurance policy to a contractual obligation.

> [A]bsence of a breach of an express term of the policy is not fatal to a bad faith claim where the plaintiff can prove a breach of the implied covenant of good faith and fair dealing. * * *

We reaffirm our holding in *Rawlings* that breach of an express covenant is not a necessary prerequisite to an action for bad faith, * * *. We hold that a plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing.

*Deese v. State Farm Mutual Automobile Insurance Company*, 838 P.2d 1265–1270 (Ariz.1992).

■ Even though the insurer here had a "fairly debatable" reason for not paying the claim in the first place, i.e., its belief that the loss was the result of arson, it cannot properly go beyond a reasonable denial of the claim and engage in unreasonable or unfair behavior to gain an unfair advantage. A "fairly debatable" reason to deny a claim is not a defense against torts that may flow from engaging in oppressive and intimidating claim practices.

Considering our standard of reviewing summary judgments, and the facts developed from that standard, together with authority cited, we determine that appellants demonstrated that there were material factual disputes and that it was improper to grant a summary judgment on appellants' cause of action for violation of a duty of good faith and fair dealing.

Affirmed in part, reversed in part, and remanded for trial on the claim for benefits under the policy and the cause of action for violation of a duty of good faith and fair dealing.